May it please the court. My name is Preston Jones, I'm representing Henry David Jackson. This is a case in which Mr. Jackson pled to racketeering with the intent to commit a crime of violence with a 20-year stat max and the simple racketeering would have a 5-year statutory maximum. The Maya came out after that plea, but before sentencing, negating the crime of violence element of the conviction because sex trafficking of children is not a crime of violence under the law. Can you tell me the sequence of lawyers who negotiated the guilty plea? Who was that sentencing? And then are you new on appeal? Yes, Your Honor, I'm new on appeal. So the first, one attorney whose name I don't recall, just did the initial appearance. And then Laura Harper, who's a federal public defender, did the plea. And then there was a conflict or there was, you know, some issues, some friction with the client. So a different public defender, Stephen Green, took it over. And then before sentencing, there was further conflict with Mr. Green. So the public defender left the case and then Brooke Busby came and did the sentencing. I ask because there was no error pre-trial, no error guilty plea, right? We didn't have the Maya yet. Right. So the crime he pled to was valid when he pled. And then it would have been up to either of the two attorneys you've told me about to move to withdrawal, correct? Well, it was a mistaken belief that it was a crime of violence. It never, you know, the law came out showing that it never was a crime of violence. After the guilty plea. Correct. Now, why didn't the government, the government hasn't invoked the appeal waiver provision here, has it? I don't believe so. No, they haven't. But I'm assuming it had an exception for ineffectiveness, but not to challenge the conviction. And well, for a conviction that exceeds the statutory maximum. Okay. But so, so wouldn't this be best heard as to ineffectiveness of either of the two counsel that didn't move to withdrawal? And I asked that, and just this is the important point I'm trying to get to. You didn't file a reply brief, but the government has informed you in their response brief that they will supersede, they'll charge everything they could have. Your client's facing a mandatory minimum, likely an upward departure. So the, so the course of action you're pursuing is, according to them, very likely to put your client in jail a lot longer. What if it was a tactical decision? They see DeMaio, but they don't want to withdraw the plea because they know they're getting a really good deal for him. What's your thought about that? Well, my thought on that is, first of all, that the client wants the, you know, obviously with the ineffectiveness issue and all that, that's part of why the client wants the case. You know, obviously he would prefer the five-year statutory maximum, but if not, he still wants it vacated. And I've, I've discussed this with the client, and I've told him, if we win by having the case completely vacated and it starts over, they have, you know, all of those things that they say in their brief, and . . . But his guilty plea's admissible at a trial. I understand that, Your Honor. Yes, and I've explained that. All right. I've explained that to my client. Your court appointed counsel, and we appreciate your service in this case. And in fact, this case, the lawyer requested an Anders brief, and it was our court that said there was an issue that needed to be briefed. Isn't that right? That's correct, Your Honor. That nobody was raising an issue, but we said we think there is an issue. And so we put that up. That's how it came to be that everyone discovered this issue, which increases the possible penalties for your client. Correct. It's a complex . . . But, but you want us to proceed with this today, nonetheless. Yes. And I, I've had several phone calls with my client. I've sent him several letters where I've said, if this, if this conviction is vacated, you know, I believe you could end up with life in prison, and he . . . Even if we ask you to brief something, you can move to dismiss it, if it's a joint motion to dismiss. Because here we are dancing on the pin of the fourth prong . . . Yes, Your Honor. But the government's . . . Okay. All right. I've, and I've, I've talked to my client extensively about that, and he, he wishes to proceed. Okay. Well, so they've conceded the, the most of the prongs. Do you have an argument on the merits that you'd like to make? Well, they've, you know, obviously, as you said, the case turns on the fourth prong, the fairness, integrity, and public reputation of judicial proceedings. Now in, in the brief of the government, they have said that my client has benefited from this error. But he didn't benefit from the error. The 20 years, the 20-year cap was an agreement the government made to not go to trial. It wasn't a benefit . . . The benefit hasn't come yet. Right. The benefit will be perhaps later on he would have had a benefit, but that's, we've had that before. In fact, we had, I have that, we had that just two months ago, where it was, the fact that you might face future jeopardy doesn't change the prong for analysis. Right. And, well, and the benefit, I would say, from this went to the government that, as you said, now they have the client's factual resume, the client's admissions on the record at re-arraignment. You know, if this is vacated and it goes to trial, you know, the government has benefited immensely in, in that trial. Yeah. You know, it's made that trial almost a rubber stamp. It's not, it's gotten rid of his Fifth Amendment, basically. You know, he's gotten, I mean, obviously he could have dismissed the appeal himself, but the benefit that the government has received has made it so that, you know, my client can't really expect a fair trial if it's, you know, vacated and sent back for trial, which is why it would, you know, obviously my client would prefer to be remanded for sentencing with the five-year . . . Well, a fair trial, a fair trial's in the eye of the beholder. Right. It would be a fair trial. It would just include his confession under the rules, so . . . Okay. Did you have anything that you want to offer on the prong four for us, or does that complete your argument? I'm not, we're not trying to cut you off. Okay. So . . . Boy, it is a tricky situation. Did you file the Anders brief, and our court asked you to brief it?  Yes, Your Honor. So, yes. You wanted to be let out. Well, it's difficult to say there's not a non-frivolous issue. There was a huge issue, but there may have tactically been a reason. Let's, I guess the answer, if you concede, if the government's going to concede third prong, how could it not be fourth prong? For a court to accept a plea to a non-crime, that almost defines miscarriage of justice. Right? I agree. That's sort of, yeah. Okay. And the government's brief said there's nothing on point in any of the cases I've brought up. And, you know, I agree that, you know, the cases that I've found, I haven't really found anything on point. The closest I found was a 2013 unpublished Fifth Circuit case that was actually with, I believe Judge Elrod was on the case, but I, you know, obviously I'm not expecting you to remember every case you were ever on, but in that case, the FBI, or the factual basis failed to establish existence of an agreement to support a conspiracy. And so the case, you know, based on an insufficient factual basis was remanded for sentencing. And, you know, the client in that case had... How could an insufficient guilty plea be remanded only for sentencing? We didn't vacate the conviction? No, it was remanded for resentencing. But there wasn't an element of the crime? It was an insufficient factual basis as to whether there was an agreement to make the conspiracy. But explain to me how that wouldn't vacate the conviction? I don't think he's here to defend that case. Well, maybe that's why the case isn't published. I don't know the case. You brought it up. Right. But I don't understand the logic. Are you sure you're describing it correctly? And I can supplement that to the court. Well, just tell me the F-3rd site, because if that's an option, obviously that would be enormously beneficial to your client. So what's the F-3rd site? I'm sorry. I don't... All I have is that it's U.S. v. Martinez, 2013, you know, it's an unpublished Fifth Circuit case. Do you have the... I have the actual case on my computer, like, saved, but... When you get up for rebuttal, you can... Okay. Well, you know, you have... You may have two business days to provide us a 28-J, and the government can provide a response within two business days thereafter, if you wish to do so. It's not required, but if you believe it's helpful. Okay. Okay. So did you have anything else? Just that whether this is a Rule 11 or a sentencing issue, whether it's vacating the plea or remanding for resentencing the case, you know, a defendant's conviction on the basis of a non-offense seriously affects the integrity of judicial proceedings, and that's it. Thank you. We appreciate your argument, and you have saved time for rebuttal. Mr. Stoltz? Thank you, Your Honor. May it please the Court. My name is Brian Stoltz, here on behalf of the government. When we talk about the fairness, integrity, or public reputation of judicial proceedings, I think that the fourth prong, it's bigger than simply the defendant. So it's not simply enough that the defendant wants this to happen. In fact, this... It is absolutely bigger than the defendant, and it's significant if you convict someone of a non-existent offense. That is a... If you heard on the street that the court was convicting people of offenses that didn't exist, that would really affect the integrity of the courts. I agree, Your Honor, but I think there's a caveat to that, which is in this particular case, if you explain that as part of the factual resume, the defendant actually stipulated to a greater offense with a higher maximum of life, which is the sex trafficking of children, he stipulated fully to that offense as well, and the travel act count was essentially laced onto that in order to give him a 20-year maximum rather than a life sentence. So if you explain, he actually stipulated to a much more serious offense that carries a life term imprisonment, but as part of a negotiated agreement, there was a decision to cap it at 20. I don't think that that is something that somebody... I think somebody on the street would certainly understand that. And I think, you know, I've been thinking of the Rahafe cases that have come out in the aftermath of Rahafe, and there's a lot of those cases, and there's certainly many of those cases where the factual resume is deficient on the knowledge, the new knowledge prong of the Rahafe decision, and nonetheless, the court has affirmed, and the court has affirmed and said there's not plain error in those cases. I think here we have an even stronger situation because, like I said, the factual resume, which is at 73, page 73 in the record, it contains a full stipulation to sex trafficking of children, which again carries a life sentence. So I don't think, I don't think we're in a situation where it's fair to characterize the case as he pled guilty to a crime that didn't exist. Well, that is indeed what happened. You may say they're extenuating circumstances, but that is what happened, isn't it, counsel? I think it's in the same way that the Rahafe cases, if they could be characterized in that way, then I think yes. I point out in the Rule 28J letter that we filed just the other day, there's a recent case, the defendant's name is Jones, it's cited in our letter. In the Jones case, this court affirmed the exact same scenario where a defendant had originally been charged with sex trafficking. In a plea, he pled to the racketeering travel count, and the court actually noted in its decision in a footnote that essentially the whole purpose of this was to remove him from having a life sentence exposure to the 20-year maximum. So, and to be clear, in that case, the defendant did not, he was attacking the plea on other grounds, he did not bring up the DiMaia issue, but I don't think this court committed plain error in affirming that sentence, and it's essentially the exact same sentence we have. They didn't raise the DiMaia issue, and the only reason that he's raised the DiMaia issue is because we raised the DiMaia issue, so we have the DiMaia issue here today. I think the court can affirm without going afoul of DiMaia, I think given the overall circumstances here of what at sentencing, counsel referred to as a very favorable plea arrangement that was negotiated, I think... Why does the government care? Aren't you better off if we don't affirm? I think that there, like I said, I think it's more of a... Do you believe this gentleman convicted a much worse crime, and you have a case, and I'm certainly not prejudging, but with the confession built in on a much higher penalty of a much worse crime, why isn't the United States better off? I think there's... Obviously we have an interest in getting a sentence that we think is an appropriate sentence. I think there's externalities here, and like there are in any time something gets remanded in terms of additional proceedings in the district court requiring an underage victim to essentially possibly come to a trial, notwithstanding that we have essentially the confession. I don't think... I think these are things that the court can and should consider. And also at the time of the plea, the government's view was that this, you know, a 20-year max was an appropriate sentence. And one thing I can think of is, you know, the defendant's age. He is in his late 40s, possibly now 50. So I think, sure, we could have stacked this thing up and basically got a life sentence or a 35-year sentence, but I think at some point the hope is, you know, if you have a 70-year-old man, he's not going to be engaging in these same activities. The record doesn't reflect that anyone saw Damiah even at sentencing because we're talking two years after the plea. No. No, Your Honor. It does not. I mean, the sentencing transcript is pretty short. Defense counsel at the time, who was different than current counsel, actually remarked that it was a favorable resolution for his client. The judge noted that he was otherwise facing a life sentence and that the guidelines would be very high, but for the way that this was structured. And I, you know, we have a very... The agreement have, you know, sometimes besides the waiver language, there's the language that you can use if it falls apart. You can use Rule 11 statements against him. That is in the plea agreement, yes, Your Honor, at 177 of the record. We have the ability to use any statements. All that is in there. I don't think it can be, certainly in particular, the very experienced public defender we have in our district, there's no question that they were aware of Davis and Damiah. And I think this record . . . There's no question they were aware at the time of sentencing of Damiah? Generally speaking. I think that the public defender's office, I mean, they've . . . You're just assuming that they know the case exists, but not that they've tied it to this particular case. Correct. I'm not . . . Yeah. I'm not saying that the specific public defender, specifically on this case we're thinking of, but I think that part of the atmospherics here that the court can certainly consider as part of the sort of very discretionary, wide-ranging, prong-for analysis is the sort of whiff of tactics here. And I think, you know, I think it's pretty clear that it . . . Well, I . . . You know, both of you are being wonderfully candid and informative because if there is an appeal waiver, you and your discretion chose not to invoke it. And I think that's appropriate when there's a big, difficult issue. On the other hand, if you had invoked it, it would have gone to habeas, right? And then, although clearly performance problems, he might not . . . there may not be proof of prejudice. So he might have prevailed at that point. And I think that you asked . . . Your Honor, you asked about the appeal waiver. I think the government has, frankly, across the board in these cases, has taken the position that on direct appeal, we're not going to try to enforce the waiver because there certainly are cases where somebody, for example, pleads guilty to a felon in possession and has a colorable argument that they did not actually know, you know, that they had the prohibited characteristic. And so I think there are . . . there certainly are circumstances where on direct appeal, somebody might be entitled to that kind of relief. But you didn't look at the specifics. You want us to look at the specifics and override the general principle that the government didn't do that, you know, didn't look at the specifics of this case and decide to do its appeal waiver. But you want us to be the heavy and say, we're going to kind of tweak prong four here in a way to avoid what would be the legal outcome. And that's really problematic. I understand where Your Honor is coming from on that, I think. Well, I . . . not invoking a waiver when there's a problem, I would say to you, is a very commendable thing. But it does get us to this circumstance, and I suppose pressing prong four is a way of not putting him in jail for life, but ultimately, there's still discretion on remand. But we just had this in a Western District case, though, and this was with the court chair, I believe. You know, and this same kind of argument we had, well, he's going to have a worse sentence, and so . . . but he's the master of his decisions, and if it's not through agreement and it's not bound, the defendant gets the right to say, I didn't do this crime, and so I can . . . I'm going to roll the dice another day. That's the system we have. We don't have a . . . we're going to all work in some kind of paternalistic fashion to give him what we think he should get when he's entitled to something else under the rule of law. I guess . . . I'm not familiar, Your Honor, with the specific case you have in mind. I know we saw it in our brief cases for the notion that the government certainly doesn't control the fourth prong, and there's cases where the government says, yes, we would like to vacate this sentence, and the court says no. So my read of the fourth prong is it's larger than that, and the court . . . the defendant essentially controls the first three prongs in terms of if he says there's an error and he thinks his rights were affected. I think what Your Honor's describing kind of collapses the fourth prong into the third prong. Well, no, but I don't think that we should do something that . . . to say, oh, well, he would be worse off if we granted the relief. That's not an appropriate question to ask. That's not . . . whether he'd be worse off or not is not our call. That's his call, whether he's worse off or not. We can say justice . . . it wasn't a wrong decision, or there's some other extenuating factor, there's other issues in the PSR. We have a lot of things that we can consider, but to say, well, he would be worse off is not one of those things that we . . . is part of the calculus for our . . . us. I don't . . . obviously, the court can consider what it wants to consider on the fourth prong. I think . . . I wouldn't say that . . . I'm not here just saying that strictly because we think it might be a worse result later, that's the only reason, you know, the courts have declined to grant relief on prong four. I think there's larger things that the court considers, such as the fact that this was a clearly negotiated arrangement in the district court for the purpose of providing this 20-year max. I think the court can consider that. I think the court can consider, you know, the ramifications of sending it back, essentially starting the case over, the impact on the victim. I think those things are all fair game as well, and I think . . . Did you put that in the brief?  Did you put the impact on the victim in the brief? On your prong four argument? I didn't . . . I don't believe that's in the brief, no. Okay. I think . . . I think the entire brief is essentially a prong four argument, and I think . . . Right, but you didn't give that element, which might have been interesting to the court. I'm sorry, give the evidence? The idea that it's bad for victims or something, that nobody made that argument to us. I think on the, like I said, on the prong four, I think the court can . . . Again, it's the court's discretion. The court can consider what it wants. I mean, I think if you look at, frankly, the appellant's brief, his prong four argument is about, you know, it's essentially one paragraph, and it just references, you know, a case where the Supreme Court, you know, says that if it's a different guideline range, you need to, you know, remand on prong four. That's not what we have here. We're not in a situation like in that case where the court can simply remand and say he needed to be re-sentenced at a lower range. I mean, that's not what we have. So I think in terms of is there a specific case on point from either side that controls the situation, I don't think there is. Let me ask you, and I'll ask opposing counsel the same thing. Suppose we rule that prong four does invalidate. What should we do with the case specifically besides reverse? How do we . . . how does the government think we should remand? What should we say in our remand? Your Honor, I think the relief that was requested in the appellant's brief in the final paragraph was reversing the conviction. So I think the conviction would be reversed. The guilty plea would be vacated. We would then go back to square one where the government is essentially free to reinstate the prior indictment, which has the sex trafficking. So I think in the Rule 28J letter that the appellant filed a few days ago, which I don't know if the courts had a chance to review that, there's a suggestion in that letter that the case could simply be remanded and resentenced with a five-year statutory maximum. And I completely disagree with that because there's just no basis for that. He was never charged with a crime that has a five-year statutory maximum. In the plea agreement, which is at page 173 in the record, he specifically stipulated that he was pleading to a crime with a 20-year statutory maximum. So I think that would be to simply remand for resentencing with a new five-year statutory maximum that doesn't apply to the offense that he pled guilty to. I think that would—there's no basis for that. That would totally, essentially unilaterally rewrite the agreement and change the plea. Well, but if we find there is plain error, it doesn't make any sense for that to work against the defendant. Well, I think—I guess I would say I think I disagree in the sense that I think sometimes when the court does find plain error in remands, it can be a worse result. And I think that's what Judge Elrod was referring to. If the defendant essentially wants to take the chance on a worse result, the court should allow it, is I think what that argument is. I tend to disagree in the sense I don't think the defendant just himself controls that. I think the court can look broader. But there is certainly a possibility of a worse result. I mean, I think looking at the entire picture— Well, could we not cap our remand with the instruction that the sentence be no worse than what we are reversing? I'm just not sure how that would work, Your Honor, because what the defendant has asked for is to vacate his Travel Act conviction, which has a 20-year statutory maximum, because he says he's not guilty of that crime. But he already stipulated that he's guilty of the underlying sex trafficking crime, which carries a life sentence. So I just don't know what legal mechanism or principles would allow to sort of say, okay, now you're—essentially now you're up on the sex trafficking charge, but the court is going to impose a 20-year statutory maximum in contravention of what the actual statutory maximum— If I'm understanding correctly, I just don't see how that would work. I think if— You're saying if he pled to a non-crime, the only relief is vacate the crime. I think that's correct, Your Honor. We can't just imagine a new crime, hold him guilty. I think that's correct, yes. And that's what he asked for. That's what he asked for, yes. I think the court, in its discretion, can say, no, we're not going to do that. I mean, the court doesn't have to grant relief on prong four. There's plenty of Rahafe cases, for example, where it doesn't grant that relief. But it doesn't grant that relief. There has to be a reason that's separate and apart. It can't be that the person would get a different sentence. That's just not—I mean, that they wouldn't— I think, Your Honor, in those cases— The reason is not here. That reason is not here. I think in those cases what the court does look at is it looks at, for example, is there likely to be a beneficial change in result if relief is granted? And if the answer is no, the court won't grant relief. And I think that's exactly what we have here. Is there likely to be a beneficial, for the defendant, change in the result? But I guess— Most of those cases— We're worried about the court's integrity and miscarriage. It's just hard to even contemplate. But that is the— Do you think that's the Rahafe case? That is, in the sort of Rahafe line of cases, on plain error review, you will see the court asking questions about is there likely to be a beneficial change in result, which is, I think, is relevant here. Asking questions doesn't mean that that's the answer— what we decide the case on. And I— We normally decide those cases on that there is some other evidence in the record that the person knew. And most all of those come out that they knew that there was something in there that you could say that they knew. And so it's not really the situation of Rahafe. Almost all of those plain error cases come out that way. And I think that's analogous to what we have here where there's evidence in the record, including the defendant's own stipulations, that he, in fact, committed the sex trafficking crime that has the life sentence. And so I think that is analogous, I think, in that the court can say, is there likely to be a beneficial change? I don't think the answer is no. Well, I don't think that's what we're asking. Is there likely to be a beneficial change? I think we're asking, is there the evidence for the crime in the record already? Oh, and I can answer that, too. I think the sex— the sex trafficking of a child crime, I think under DiMaia, would not be considered a crime of violence. I think the record does show that he did commit a crime of violence. It's in there in the plea, so... And, in fact, you know, if the sex— if, for example, assault had been listed because the PSR recounts that he choked the victim while having sex with her, which itself was, I think, likely a rape. So I think there is a crime of violence in the record that could support that. Okay. Well, we're going to probably have more of these types of situations with the Borden case out this morning. I don't know if y'all have seen that yet. No, I haven't seen that yet. Ruling that— about recklessness in the ACCA. Oh, okay. Anyway. Just to close, I would ask the court— I think the Jones case, the recent case that we cited in our recent 28-J letter in response to theirs, I think is relevant in that it was the exact same plea, the exact same original charges were just plied down, and the court affirmed that. I don't think it was plain error in that case or in this case. Thank you, Your Honor. Thank you. You may proceed. Thank you, Your Honor. Do you have any rebuttal, Mr. Jones? Well, Your Honor, the first thing, the government was basically saying if there's any beneficial— I'm a scarecracker, but if there's any sort of beneficial result for my client that the court shouldn't do anything that benefits my client, which would make me think, why am I here? And he's also said, repeated several times, that the trial attorney said it was a good deal, but that assumes that my client would have either lost at trial or pled to the indictment, and so it's not a good deal compared to if he had gone to trial and won. I mean, we can't just assume my client's going to lose. We can't just assume that if it benefits my client, it can't be good. You know, and I just think there's two choices here, remand for sentencing or vacate for new trial, and obviously that's— we rely on you to make those hard decisions. I'm just a servant of the court here to— Right, but you have to request free sentencing in your principal brief, or at least in a reply brief, or give us authority. You know, you're saying there's authority, but you don't know what the site is. I'm in doubt very much there's authority that we could vacate and limit relief to assume a plea. I just don't understand how that could work. I understand, Your Honor, and I'll— So it's not a hard choice if you can't give us authority to make even a choice. I understand that, Your Honor. And I didn't, in my brief, I believe I said I wanted to dismiss, you know, the conviction, but I didn't say vacate. I mean, I didn't mention the five-year stat max as well. I understand that, but I don't believe I said vacate the whole conviction. I just said, you know, for just basically it's the crime of violence part of the conviction that, you know, if you can basically dismiss the conviction and have it be to the lesser included, then that's how you get to the five-year stat max of the simple racketeering. And I'll send the 28-J letter and, you know, see if I can expand upon that better. Yeah, that's whatever instruction you're given. Does anyone else—I mean, do you have anything? And just as one other thing about the whether the public defender knew, I mean, if he's to assume the public defender knew, then we're also to assume that the U.S. attorney knew. But the attorney who did the sentencing was a solo attorney that, you know, she would be less expected to know that, you know, compared with the entire, you know, U.S. attorney's office. And that's all I have, Your Honor. Thank you. We have your argument. We have arguments on both sides. Thank you very much.